**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| XANADU BUILDERS, INC., *an Illinois corporation*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 26 C 3989 |
| | ) | |
| NEXT SCALE CONSTRUCTION LLC, *an Illinois limited liability company*, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

**CHARLES P. KOCORAS, District Judge:**

This dispute between Plaintiff, Xanadu Builders, Inc. ("Xanadu"), and Defendants, Next Scale Construction LLC ("Next Scale"), Kenneth Smith, Beth Hohenberger, and Anthony Cantore (collectively the "Next Scale Defendants"), arises out of the alleged misappropriation of Xanadu's confidential business information and trade secrets. Xanadu's complaint alleges the Next Scale Defendants violated the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831 *et seq*., and advances state common law unfair competition and conspiracy claims arising out of the individuals leaving Xanadu's employment, starting a competing business (Next Scale), and taking part in bidding processes against Xanadu involving Xanadu's client. Before the Court is the Next Scale Defendants' joint motion to dismiss under Federal Rule of

Civil Procedure 12(b)(6). For the reasons that follow, the Next Scale Defendants' motion is denied.

## BACKGROUND

The factual allegations are taken from the complaint and are presumed true; all reasonable inferences are drawn in Xanadu's favor.

Xanadu is a general contractor specializing in multi-center construction and renovation. It has developed proprietary methodologies, tools, templates, project management systems, and financial models, among other things, to serve its clients. This confidential business information and trade secrets are economically valuable to Xanadu, and thus, Xanadu has implemented various measures to avoid its unauthorized disclosure.

Xanadu's client is KinderCare Learning Companies Inc. ("KinderCare"). Prior to October 2025, KinderCare contracted exclusively with Xanadu to perform construction work on its facilities across the country. In or about October 2025, KinderCare moved to a competitive bid program for its construction projects.

Smith was a project manager at Xanadu where he managed approximately 23 construction projects, all of which were for KinderCare. However, on or about October 17, 2025, Smith left Xanadu and started his own construction company, Next Scale. In November 2025, Hohenberger, Xanadu's then-office manager, and Cantore, Xanadu's then-general manager/project manager, left Xanadu and joined Next Scale.

Almost immediately after Smith left Xanadu, Next Scale began bidding on KinderCare projects. This included at least one project wherein Next Scale submitted its bid while Smith was still an employee and thus had access to Xanadu's confidential bid. Next Scale also bid on and won at least three KinderCare construction projects and has bid on at least three additional KinderCare construction projects, for which projects have not yet been awarded.

During this time and while bidding on KinderCare projects, Smith retained Xanadu's laptop computer and company cell phone. The devices contained Xanadu's confidential business information and trade secrets. Although Smith was asked to return the devices in October 2025, he improperly retained them until March 2026.

During their employment with Xanadu, Hohenberger and Cantore also had access to Xanadu's confidential information and trade secrets. Xanadu believes that prior to Hohenberger and Cantore leaving Xanadu, they communicated and reached an agreement with Smith regarding Next Scale's use of Xanadu's information to bid on the KinderCare projects.

Xanadu alleges that Next Scale used Xanadu's confidential business information and trade secrets to outbid Xanadu on KinderCare projects, resulting in the loss of business opportunities, confidential information, and goodwill. Xanadu filed this lawsuit asserting a claim under DTSA and a common law unfair competition claim against Next Scale and Smith, as well as a civil conspiracy claim against Smith,

Hohenberger, and Cantore. The Next Scale Defendants move to dismiss the complaint under Rule 12(b)(6) for failure to state a claim.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529 (2011). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

### a. Misappropriation of Trade Secrets

To state a claim for trade secret misappropriation under DTSA, "a plaintiff must show that (1) a trade secret existed, (2) the trade secret was misappropriated, and (3) the owner of the trade secret was damaged by the misappropriation." *Nielsen Consumer LLC v. Circana, LLC*, 2025 WL 815666, at *7 (N.D. Ill. 2025) (quoting *Covenant*

*Aviation Sec., LLC v. Berry*, 15 F. Supp. 3d 813, 817 (N.D. Ill. 2014)). Xanadu has done so.

### *i. Existence of a Trade Secret*

As a preliminary matter, the Next Scale Defendants argue that Xanadu fails to identify any concrete secrets and instead provides blanket generalizations or categories of information which are insufficient. However, "trade secrets need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secrets." *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 920–21 (N.D. Ill. 2001). "At the pleading stage, plaintiffs need only describe the information and efforts to maintain the confidentiality of the information in general terms." *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 558, 573 (N.D. Ill. 2019). Thus, "[c]ourts only dismiss a claim for lack of specificity on the pleadings in the most extreme cases." *Fire 'Em Up, Inc. v. Technocarb Equip. (2004) Ltd.*, 799 F. Supp. 2d 846, 850 (N.D. Ill. 2011). This is not an extreme case.

In Xanadu's complaint, it describes its alleged trade secrets as follows:

a. confidential and proprietary methodologies, tools, templates, project management systems, and financial models for serving its clients;

b. confidential and proprietary client-specific strategies, project tools, and templates;

c. confidential and proprietary client-specific pricing, financial data, margins, and terms of service;

d. confidential and proprietary client data, including information regarding clients' actual or anticipated business needs; and

e. other sensitive, non-public information about Xanadu, its clients, business operations, prospective clients, and employees.

Dkt. # 1, ¶ 41.

Similar allegations, which clearly define what the alleged trade secrets are at a high level, have been repeatedly found to be sufficient in this District. *See, e.g.*, *Fire 'Em Up, Inc.*, 799 F. Supp. 2d at 850 (list of current and prospective customers, suppliers, business partners, compilations of materials necessary to create the product or perform certain services, programs, methods, techniques and devices, financial data, marketing plans and advertising strategies); *Covenant Aviation Sec., LLC*, 15 F. Supp. 3d at 818 (profit and loss information, internal costs and overhead, operational information as related to facilities, and specific bid and proposal information); *Mission Measurement Corp. v. Blackbaud, Inc.*, 216 F. Supp. 3d 915, 921 (N.D. Ill. 2016) (a method for collecting standardized data; method for calculating grantee impact; software design specifications; impact reports and analytics; and business models for selling access to metrics databases).

The Next Scale Defendants are correct that "it is insufficient for a plaintiff to point to broad areas of technology and assert that something there must have been secret and misappropriated." *Nielsen Consumer LLC*, 2025 WL 815666, at *8 (N.D. Ill. 2025). However, this bar is far lower than the Next Scale Defendants argue. *See, e.g.*, *Cozzini Bros. v. Cozzini Cutting Supplies, LLC*, 2026 WL 710853, at *4 (N.D. Ill. 2026)

("[N]owhere does the complaint adequately and specifically describe what the trade secret information is comprised of."). To provide an example of what is insufficient, in *Cozzini Bros.*, the complaint did not further define the broad term of "trade secrets." *Id.* The complaint included the terms "customer lists and pricing information," but did not clarify if these were alleged trade secrets or just confidential information more broadly. *Id.* Given the lack of clarity, the complaint did not allege that a trade secret existed. *Id.* Here, in contrast, Xanadu provided a level of clarity consistent with case law by specifically defining what its trade secrets consist of. *See Fire 'Em Up, Inc.*, 799 F. Supp. 2d at 850; *Covenant Aviation Sec., LLC*, 15 F. Supp. 3d at 818; *Mission Measurement Corp.*, 216 F. Supp. 3d at 921. This is all that is required at this stage.

Additionally, "[t]o show that particular information is a protectable trade secret, a plaintiff must demonstrate that the information is valuable, that it is not known to others who might profit by its use, and that it has been handled by means reasonably designed to maintain secrecy." *Nielsen Consumer LLC*, 2025 WL 815666, at *8 (citing *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583 (7th Cir. 2002)).

Xanadu adequately pleaded that the information is valuable and not known to others who might profit from it. The complaint reads, "Xanadu derives independent economic value from the information not being generally known to, and not being readily ascertainable by, other persons who could obtain economic value from its disclosure or use." Dkt. # 1, ¶ 42. This is enough at the pleading stage.

The last question is whether Xanadu demonstrated that the information was handled by means reasonably designed to maintain secrecy. In the complaint, Xanadu alleges,

> Xanadu takes reasonable measures to protect their unauthorized dissemination, disclosure, and use, including, but not limited to: (a) limiting access to its Confidential Information and trade secrets through protected networks and cloud storage systems; (b) restricting access to client-related and other materials to those with a business need to know; and (c) requiring turnover of company issued electronics upon termination of employment.

Dkt. # 1, ¶ 12.

"At the motion to dismiss stage, plaintiff need only allege that it employed reasonable confidentiality measures to protect its alleged trade secrets." *Nielsen Consumer LLC*, 2025 WL 815666, at *8. "[D]etermining the reasonableness of a given confidentiality measure requires a fact-based inquiry dependent on the specific circumstances." *Sonrai Sys., LLC v. Waste Connections, Inc.*, 658 F. Supp. 3d 604, 615 (N.D. Ill. 2023). "Only in an extreme case can what is a reasonable precaution be determined as a matter of law, because the answer depends on a balancing of costs and benefits that will vary from case to case." *Id.*

First, the lack of any written confidentiality agreement is not dispositive. *Id.* ("Defendant would have this Court find the existence of a written confidentiality agreement a *sine qua non* to pleading the existence of a trade secret. Yet, courts do not uniformly accept this proposition."). Given written confidentiality agreements are not required to allege the existence of a trade secret in each and every case, *see, e.g.*,

*Symbria, Inc. v. Callen*, 2022 WL 60530, at *11 (N.D. Ill. 2022); *but see Fire 'Em Up, Inc.*, 799 F. Supp. 2d at 851, the Court will not go further in considering the lack of a confidentiality agreement at this stage.

The Next Scale Defendants also contend that Xanadu's pleaded confidentiality measures were not reasonable. "Even if true, the question the Court must answer today remains focused on the pleading standard: Has Xanadu plausibly alleged that it employed reasonable confidentiality measures to protect its alleged trade secrets?"[1] *Id.* at 616. Xanadu alleges it employed several measures to maintain secrecy, such as limiting access through protected networks, restricting access to materials on a need-to-know basis, and requiring turnover of company issues electronics at the termination of employment. Xanadu will ultimately have to prove these measures were reasonable, but at this stage Xanadu has alleged enough to plead the existence of a trade secret.

***ii. Misappropriation***

The Next Scale Defendants also argue that Xanadu has failed to show that a trade secret was misappropriated. DTSA defines "misappropriation" as the "acquisition of a trade secret of another . . . by improper means" or the "disclosure or use of a trade secret

[1] The Next Scale Defendants cite several cases arguing Xanadu's confidentiality measures were not reasonable. *See Cumulus Radio Corp. v. Olson*, 80 F. Supp. 3d 900 (C.D. Ill. 2015); *Abrasic 90 Inc. v. Weldcote Metals, Inc.*, 364 F. Supp. 3d 888 (N.D. Ill. 2019); *Gillis Associated Indus., Inc. v. Cari-All, Inc.*, 206 Ill. App. 3d 184 (1990). However, all these cases were at the injunctive relief stage and were evaluating the likelihood of success on the merits. The Court is evaluating whether Xanadu has stated a claim, not the claim's likelihood of success, so the Next Scale Defendants' arguments are unpersuasive at this time.

of another without express or implied consent . . .." *Packaging Corp. of Am., Inc. v. Croner*, 419 F. Supp. 3d 1059, 1066 (N.D. Ill. 2020); 18 U.S.C. § 1839(5)(A)–(B).

First, Xanadu has failed to show that a trade secret was acquired by improper means. Xanadu alleges that its prior employees left with its information and subsequently used that information for Next Scale's benefit. However, where employees are given access to confidential information and trade secrets, failure to return the lawfully acquired information is not misappropriation. *Packaging Corp. of Am., Inc.*, 419 F. Supp. 3d at 1066. "Improper means requires alleging theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." *Prominence Advisors, Inc. v. Dalton*, 2017 WL 6988661, at *4 (N.D. Ill. 2017) (citing 18 U.S.C. § 1839(6)). Alleging that information was acquired through official duties and employment, even when an employee improperly retains the information, does not rise to any of these means. *See id.* Because Xanadu only alleged the former employees acquired the information as part of their employment, the Court cannot reasonably infer that the information was acquired by improper means.

However, Xanadu plausibly alleged the Next Scale Defendants disclosed or used a trade secret. "[M]ere possession of trade secrets does not suffice to plausibly allege disclosure or use of those trade secrets, even when considered in conjunction with solicitations of former clients." *Packaging Corp. of Am., Inc.*, 419 F. Supp. 3d at 1066. Xanadu has alleged more than just possession and solicitation of former clients and

instead has provided enough circumstantial evidence to allege use or disclosure. *RKI, Inc. v. Grimes*, 177 F. Supp. 2d 859, 876 (N.D. Ill. 2001) ("Because direct evidence of theft and use of trade secrets is often not available, the plaintiff can rely on circumstantial evidence to prove misappropriation by drawing inferences from perhaps ambiguous circumstantial evidence.").

The chronology of events allows misappropriation to be inferred. Xanadu alleges that Smith created a competing business while employed by Xanadu and bid against Xanadu both while working there and after officially leaving Xanadu. Additionally, Smith's entire portfolio was KinderCare projects, the very same projects he bid on with Next Scale and win. Drawing inferences in Xanadu's favor, and given Smith is alleged to be somewhat of an expert on KinderCare through his work at Xanadu, it is hard to believe Smith founded Next Scale and quickly obtained KinderCare as a client using no trade secret knowledge. At this stage, strong inferences and circumstantial evidence of misappropriation are enough. *See Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005) ("Where pleadings concern matters peculiarly within the knowledge of the defendants, conclusory pleading on 'information and belief' should be liberally viewed.") (quoting *Tankersley v. Albright,* 514 F.2d 956, 964 n. 16 (7th Cir. 1975)).

This conclusion is also supported by the inevitable disclosure doctrine which allows for unauthorized disclosure to be inferred in exactly these types of

circumstances.[2] In evaluating inevitable disclosure, courts examine: "(1) the level of competition between the former and new employer; (2) the similarity between the employee's former and new positions; and (3) the actions the new employer has taken to prevent the use or disclosure of the former employer's trade secrets." *Packaging Corp. of Am., Inc.*, 419 F. Supp. 3d at 1070. At this stage, Xanadu "must merely allege that the employee cannot operate without inevitably disclosing the confidential information." *Allied Waste Servs. of N. Am., LLC v. Tibble*, 177 F. Supp. 3d 1103, 1112 (N.D. Ill. 2016). Given the circumstantial evidence discussed above, Xanadu has alleged as much and has sufficiently alleged that a trade secret was misappropriated.

***iii. Damages***

Xanadu has also adequately pleaded damages. The Next Scale Defendants argue the claim fails because Xanadu did not allege that it bid on any of the same projects as Next Scale and Xanadu did not plausibly allege it would have won. However, this is not necessary to state a claim.

DTSA offers three separate measures of damages, one of which is damages for any unjust enrichment caused by the misappropriation of the trade secret. 18 U.S.C § 1836(b)(3)(B); *see Motorola Sols., Inc. v. Hytera Commc'ns Corp. Ltd.*, 108 F.4th 458, 489 (7th Cir. 2024). The complaint alleges that Next Scale used stolen trade secrets to

---

[2] A DTSA claim based on inevitable disclosure may survive a motion to dismiss. *Gen. Elec. Co. v. Uptake Techs., Inc.*, 394 F. Supp. 3d 815, 834 (N.D. Ill. 2019). However, the Court has found that the use of the doctrine for injunctive relief is not available. *Aon PLC v. Alliant Ins. Servs., Inc.*, 2023 WL 3914886, at *5 (N.D. Ill. 2023).

win contracts and that Next Scale profited from its resulting business with KinderCare. This allegation falls squarely within conduct which calls damages under DTSA as compensation for Next Scale's unjust enrichment.

Next, the Next Scale Defendants contend that Xanadu did not adequately plead causation. However, the complaint is sufficient. "The harm that results from wrongful misappropriation of information results from the defendant's use of that information." *Allstate Ins. Co. v. Ameriprise Fin. Servs., Inc.*, 2023 WL 5334638, at *29 (N.D. Ill. Aug. 18, 2023) (quoting *SKF USA Inc. v. Bjerkness*, 2010 WL 3155981, at *8 (N.D. Ill. 2010)). At this point, Xanadu has alleged that Next Scale used Xanadu's trade secrets and thus has sufficiently alleged harm. This is enough to clear any causation requirement.

> Defendants are mistaken in asserting that plaintiff can recover no damages unless it proves a causal link between the customers [lost] . . . and Defendants' misappropriation of trade secrets. Even if plaintiff cannot prove such a link, it is still entitled to damages for the harm of the misappropriation of its trade secrets . . .

*Id.* (quoting *SKF USA Inc.*, 2010 WL 3155981, at *8) (cleaned up). While the type of damages sought may require additional evidence or causation, where unjust enrichment is concerned, Next Scale's alleged use of the trade secret is sufficient harm to warrant damages. Xanadu has adequality pleaded damages, and given Xanadu has shown each of the three elements, the motion to dismiss for failure to state a claim as to the trade secret misappropriation claim is denied.

**b. Common Law Unfair Competition**

***i. Preemption by the Illinois Trade Secrets Act***

The Next Scale Defendants contend that Xanadu's unfair competition claim is preempted by the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065/1-9 (West 1988). Section 8(a) states, "this Act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." 765 ILCS 1065/8(a); *Thomas & Betts Corp. v. Panduit Corp.*, 108 F. Supp. 2d 968, 971 (N.D. Ill. 2000); *Abanco Int'l, Inc. v. Guestlogix Inc.*, 486 F. Supp. 2d 779, 781 (N.D. Ill. 2007). However, in relevant part, ITSA does not displace or preempt "other civil remedies that are not based upon misappropriation of a trade secret . . ." 765 ILCS 1065/8(b); *see Hecny Transp., Inc. v. Chu*, 430 F.3d 402, 404–05 (7th Cir. 2005). The Next Scale Defendants argue the claim is based solely on the misappropriation of trade secrets and is completely preempted.

Because ITSA only preempts claims based on trade secrets, any claim based on other confidential information is not preempted. *See Covenant Aviation Sec., LLC*, 15 F. Supp. 3d at 820 ("ITSA [ ] only preempts if the confidential information at issue constitutes trade secrets."). Where the complaint makes a distinction between the trade secrets and other non-trade secret, confidential information, a plaintiff may proceed on a tort claim related to the latter. *See Abanco Int'l, Inc*, 486 F. Supp. 2d at 782 (allowing a tort claim to proceed related to "valuable and proprietary" information). Xanadu's complaint refers to both confidential information and trade secrets. Therefore, to the

extent the unfair competition claim is based on separate, confidential information as opposed to trade secrets, the claim is not preempted by ITSA and may proceed.

### *ii. Intentional and Unjustified Interference*

In Illinois, the tort of unfair competition falls under the umbrella of tortious interference with prospective economic advantage. *Holbrook Mfg. LLC v. Rhyno Mfg. Inc.*, 497 F. Supp. 3d 319, 341 (N.D. Ill. 2020). As such, a plaintiff must plead and prove every element of a claim for tortious interference with prospective economic advantage to succeed on an unfair competition claim: "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damages to the plaintiff resulting from the defendant's interference. *Id*. at 337, 341.

The Next Scale Defendants argue Xanadu has not pleaded an intentional and unjustified interference because Xanadu could not have had an expectancy of continued business with KinderCare through an open, competitive bidding process. Both parties point to *Quadro Enters., Inc. v. Avery Dennison Corp.* to support their positions. *See* 2000 WL 1029176, at *10 (N.D. Ill. 2000). However, the case supports Xanadu's position. The court explained that with sufficient contacts, there is more than a "mere hope" of continued business, allowing a plaintiff to survive a motion to dismiss:

> Quadro has alleged contacts with State Farm that are not insubstantial: existing contracts with State Farm, an invitation to bid, as well as development and testing of other label sheet programs for State Farm. These allegations are adequate, at

> least at this stage, to support the conclusion that Quadro had more than a "mere hope" of a continued business relationship with State Farm.

*Id.*

The same sort of contacts exists here. Xanadu had existing contracts with KinderCare, bid on KinderCare's projects, and developed business tools specifically for KinderCare's projects. Given the long working relationship between KinderCare and Xanadu, Xanadu certainly had more than a "mere hope" of a continued business relationship. Xanadu has plausibly alleged a reasonable business expectancy, and while a different result may be reached on a motion for summary judgment, there is enough here to deny the Next Scale Defendants' motion to dismiss the claim. The motion to dismiss as to the unfair competition claim is denied.

**c. Civil Conspiracy**

***i. Conclusory Facts***

The Next Scale Defendants contend that Xanadu's conspiracy claim contains only conclusory facts and thus fails to state a claim. Under Illinois law, Xanadu must show "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Liqui-Box Corp. v. Scholle IPN Corp.*, 449 F. Supp. 3d 790, 803 (N.D. Ill. 2020). Xanadu "must allege specific facts from which the existence of a

conspiracy may properly be inferred." *Fritz v. Johnston*, 209 Ill.2d 302, 318 (2004). Xanadu did.

The complaint alleges that Hohenberger and Cantore communicated with Smith prior to their departures from Xanadu, reached an agreement to join Next Scale, and departed Xanadu shortly after Smith to join his newly formed company. Given the three employees left Xanadu and joined Next Scale in quick succession, within mere weeks of each other, this supports an inference of some agreement. As Xanadu puts it, "[w]ho quits a stable job to join a six-day-old startup that had no clients, no contracts, and no revenue absent a prior arrangement or some assurance about the venture's prospects?" Dkt. # 26, at 12. At this stage, strong inferences and circumstantial evidence are enough, and a conspiracy can be inferred. *See Brown*, 398 F.3d at 914.

***ii. Preemption by ITSA and Conspiracy as a Derivative Claim***

Next, the Next Scale Defendants argue that just as the unfair competition claim is preempted by ITSA, so is the conspiracy claim. As previously stated, ITSA preempts common law claims based on trade secrets. *ExactLogix, Inc. v. JobProgress, LLC*, 508 F. Supp. 3d 254, 271 (N.D. Ill. 2020). Where the conspiracy claim attaches to preempted claims, a conspiracy claim is also preempted and must be dismissed. *See id*. However, as previously concluded, the unfair competition claim, to the extent it is not based on trade secrets, is not preempted and may proceed. The same is true for the conspiracy claim. Xanadu alleges conduct beyond the use of trade secrets, namely the

use of non-trade secret information. The conspiracy claim, like the unfair competition claim, is independent of the use of trade secrets and is not preempted.

The Next Scale Defendants also state that because conspiracy is a derivative claim, it must be dismissed with the underlying unfair competition claim. However, because the Court has concluded that Xanadu has adequately pleaded an unpreempted tort, the conspiracy claim cannot be dismissed on this ground. *See Sonrai Sys., LLC*, 658 F. Supp. 3d at 612-13.

***iii. Intra-corporate Conspiracy Doctrine***

Lastly, the Next Scale Defendants contend there could not be a conspiracy under the intra-corporate conspiracy doctrine. The doctrine "holds that an agent acting within the scope of his employment cannot conspire with its principal or with other agents of that principal." *Liqui-Box Corp.*, 449 F. Supp. 3d at 803. The Next Scale Defendants contend that since Smith owns Next Scale and Hohenberger and Cantore are its employees, as agents of the same entity, they are legally incapable of conspiring with one another. Xanadu, however, says that the conspiracy was formed before Hohenberger and Cantore joined Next Scale, while they were employed by Xanadu, and the doctrine does not apply under these circumstances.

Xanadu's argument is persuasive. The complaint alleges that an agreement occurred before Hohenberger and Cantore left Xanadu, before any intra-corporate relationship among the Defendants. *See* Dkt. # 1, ¶ 61. The Next Scale Defendants offer no caselaw to suggest that the intra-corporate conspiracy doctrine applies where

the parties acted prior to joining an entity. Nor do the Next Scale Defendants contend the agency relationship began prior to Hohenberger and Cantore's employment with Next Scale. Thus, the intra-corporate conspiracy doctrine does not apply for purposes of the motion to dismiss, and the motion to dismiss as to the conspiracy claim is denied.

## CONCLUSION

For the foregoing reasons, the Next Scale Defendants' joint motion to dismiss [24] is denied. The parties shall file their initial joint status report by December 4, 2026. It is so ordered.

Charles P. Kocoras
United States District Judge

Date: November 10, 2026